IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **WILLIAM BRENT REDDING et al,** | § | |
| *Plaintiffs,* | § | |
| | § | **LEAD CASE:** |
| **v.** | § | |
| | § | **CIVIL NO. 1-17-CV-00470-ADA** |
| **SERGEANT PATRICK SWANTON, IN** | § | |
| **HIS INDIVIDUAL CAPACITY;** | § | **MEMBER CASES:** |
| **STEVEN SCHWARTZ, IN HIS** | § | |
| **INDIVIDUAL CAPACITY;** | § | **CIVIL NO. 1-16-CV-01153-ADA** |
| **CHRISTOPHER FROST, IN HIS** | § | **CIVIL NO. 1-17-CV-00468-ADA** |
| **INDIVIDUAL CAPACITY; JEFFREY** | § | **CIVIL NO. 1-16-CV-01154-ADA** |
| **ROGERS, IN HIS INDIVIDUAL** | § | **CIVIL NO. 1-17-CV-00469-ADA** |
| **CAPACITY; BRENT STROMAN,** | § | |
| **CHIEF OF POLICE FOR THE WACO** | § | |
| **POLICE DEPARTMENT, IN HIS** | § | |
| **INDIVIDUAL CAPACITY; ABELINO** | § | |
| **REYNA, ELECTED DISTRICT** | § | |
| **ATTORNEY FOR MCLENNAN** | § | |
| **COUNTY, TEXAS, IN HIS** | § | |
| **INDIVIDUAL CAPACITY; AND** | § | |
| **MANUEL CHAVEZ, WACO POLICE** | § | |
| **DEPARTMENT DETECTIVE, IN HIS** | § | |
| **INDIVIDUAL CAPACITY;** | § | |
| *Defendants.* | § | |
| | § | |

## <u>ORDER</u>

Before the Court are: Defendants Frost and Schwartz's Motions to Dismiss (ECF Nos. 25, 37, 41); the City Defendants' Joint Motions to Dismiss (ECF Nos. 26, 36, 38, 40, 43); Defendant Reyna's Motions to Dismiss (ECF Nos. 35, 39, 42); and the respective responses, replies, and sur-replies thereto. The Court, having considered the Motions and the applicable law, finds that the Motions should be **GRANTED** as discussed below.

## I.     INTRODUCTION

This case stems from the Twin Peaks restaurant incident on May 17, 2015. Members of the Bandidos and Cossacks Motorcycle Clubs, along with hundreds of other motorcycling

enthusiasts, converged on the restaurant. Tensions between the Bandidos and Cossacks erupted in a shootout that left nine dead and many injured. In the aftermath of the incident, police arrested 177 individuals on charges of Engaging in Organized Criminal Activity. The probable cause affidavit in support of the arrest warrants was the same for each of the 177 arrestees, and a justice of the peace set bond for each of the arrestees at one million dollars. Only one of the criminal cases ever went to trial (the defendant in that case is not a party to the instant action), and those proceedings ended in a mistrial. The state eventually dropped all remaining charges against the arrestees. The plaintiffs in this case, William Brent Redding and others similarly situated, were arrested pursuant to the same probable cause affidavit as the other arrestees. Significantly, these Plaintiffs were also indicted.[1]

Plaintiffs bring this case pursuant to 42 U.S.C. § 1983. They allege that Defendants violated their First Amendment rights to associate with political groups and to express that affiliation with clothing. Plaintiffs also allege that Defendants violated their Fourth Amendment rights by obtaining arrest warrants based on a fill-in-the-name affidavit that lacked probable cause. Additionally, Plaintiffs allege that Defendants violated their equal protection rights under the Fifth Amendment. Lastly, Plaintiffs contend that the defendants violated their Fourteenth Amendment due process right to be free from unlawful arrest. Plaintiffs allege that the defendants conspired to commit these violations.

There are three groups of defendants in this case. The first group consists of: Brent Stroman, Chief of Police; detective Jeffrey Rogers; and police officers Manuel Chavez, Patrick Swanton. The second group is former McLennan County District Attorney Abelino "Abel" Reyna. The third group is Steven Schwartz and Christopher Frost, both of whom are special

---

[1] *See* ECF No. 9 at 1; ECF No. 35 at 9; ECF No. 42 at 9. The Court notes Plaintiffs' amended complaints omit statements previously acknowledging Plaintiffs' indictments in the original complaint.

agents of the Texas Department of Public Safety. The plaintiffs bring suit against the defendants in their individual capacities. The individual defendants all assert qualified immunity.

## II.      LEGAL STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. Two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). To survive Rule 8, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court begins by identifying which allegations are well-pleaded facts and which are legal conclusions or elemental recitations; accepting as true the former and rejecting the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not blindly accept every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The court then determines whether the accepted allegations state a plausible claim to relief. *Id.* at 379.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of Rule 12(b)(6), "pleadings" include the complaint, its attachments, and documents referred to in the complaint and central to a plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action barred by qualified immunity. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 793 (W.D. Tex. 2016) (Martinez, J.) (dismissing a plaintiff's claim based on qualified immunity). Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare

circumstances. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, No. 14-10228, 2019 WL 3928715, at *5 (5th Cir. Aug. 20, 2019), *as revised* (Aug. 21, 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." 555 U.S. at 236. Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield*, 551 F.3d at 326. If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

A heightened pleading requirement is imposed on a civil rights plaintiff suing a state actor in his individual capacity. *Elliott v. Perez*, 751 F.2d 1472, 1479 (5th Cir. 1985). To satisfy the heightened pleading requirement and maintain a § 1983 action against an official who raises a qualified immunity defense, a complaint must allege with particularity all material facts establishing a plaintiff's right of recovery, including "detailed facts supporting the contention that [a] plea of immunity cannot be sustained." *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit*, 954 F.2d 1054, 1055 (5th Cir. 1992). Mere conclusory allegations are insufficient to meet this heightened pleading requirement. *Elliott*, 751 F.2d at 1479.

### III.    ANALYSIS

#### A.  Fifth and First Amendments

Plaintiffs claim Defendants deprived Plaintiffs of equal protection under the Due Process Clause of the Fifth Amendment because "Defendants arbitrarily arrested people from some motorcycle clubs, but not from club [sic] of which they approved (Christian clubs, e.g.)." ECF No. 22 at 26. However, as alleged, Plaintiffs have not stated a valid claim. The Fifth Amendment applies "only to violations of constitutional rights by the United States or a federal actor." *See Morin v. Caire*, 77 F.3d 116, 120 (5th Circ. 1996). The Fourteenth Amendment, not the Fifth, is the correct vehicle in which to assert any violations of Plaintiffs' equal protection rights.

Out of an abundance of caution, the Court will consider the equal protection allegations under the Fourteenth Amendment, despite it not being properly pled. To allege an equal protection claim, Plaintiffs must allege "that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F3d 699, 705 (5th Cir. 1999). Plaintiffs must allege and show that an act was undertaken with an express discriminatory purpose. *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997). Disparate impact alone is not sufficient. *Id.* at 307. "Discriminatory purpose in an equal protection context implies that the decisionmaker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Id.* (*quoting Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)).

In this case, Plaintiffs' complaints do not sufficiently allege that similarly situated persons outside their class[2] were treated differently by Defendants, nor do they allege that Defendants' actions were motivated by direct, discriminatory animosity. ECF No. 22 at 26. Plaintiffs' allegations are insufficient to state a claim for an equal protection violation.  Thus,

---

[2] Even assuming the Plaintiff is part of a "class," the Court finds no equal protection violation in this case.

Plaintiffs' equal protection under the Due Process Clause of the Fourteenth Amendment claims are **DISMISSED**.

The Court also finds that Plaintiffs' First Amendment claims are merely a conclusory re-casting of Plaintiffs' Fourth Amendment claims. *See generally* ECF No. 22 at 26. Plaintiffs have made no specific factual allegations of any Defendants' involvement in any abridgment of their First Amendment rights. *Id*. Additionally, any claim for abridgment of Plaintiffs' First Amendment rights to freely assemble or associate that might have resulted from Plaintiffs' arrests is defeated by the existence of probable cause. *See Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008) ("Probable cause is an objective standard. If it exists, any argument that the arrestee's speech . . . was the motivation for her arrest must fail . . . ."). Beyond the existence of probable cause, which the Court finds did exist in this case, the criminal statute under which Plaintiffs were arrested does not criminalize mere association. *See* Tex. Penal Code § 71.01. The statute criminalizes participation in a combination of persons to commit or conspire to commit a criminal offense. *Id*. Defendants' motivation for arresting and charging Plaintiffs was the suspicion of Plaintiffs' involvement in the commission of criminal conduct. Plaintiffs' suspected association with a motorcycle club is simply a fact that contributes to establishing that involvement. *See Brosky v. State*, 915 S.W.2d 120, 131 (Tex. App.—Ft. Worth 1996, pet. ref'd). The scope of Plaintiffs' right to assembly "does not encompass a right to associate with active members of a criminal street gang for the purpose of engaging in crime." *See Ta v. Pliler*, No. CV 03-00076RSWL, 2009 WL 322251, at *33 (C.D. Cal. Feb. 6, 2009). For the aforementioned reasons, Plaintiffs' First Amendment claims are **DISMISSED**.

**B. Fourteenth and Fourth Amendments**

The Court notes that Plaintiffs bring their claims against the defendants under both the Fourth and Fourteenth Amendments. But "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal punctuation omitted). A citizen has a right under the Fourth Amendment to be free from arrest unless the arrest is supported by either a properly issued arrest warrant or probable cause. *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). "The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." *Albright*, 510 U.S. at 274. Because the Fourth Amendment covers unlawful arrest, Plaintiffs cannot also seek relief under the Fourteenth Amendment. *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 814 (5th Cir. 2010). Accordingly, Plaintiffs' Fourteenth Amendment claims are **DISMISSED**, and the Court will address their claims in the context of the Fourth Amendment.

The Court also notes that Plaintiffs attempt to invoke an exception to the general rule described above, citing *Cole v. Carson*, 802 F.3d 752 (5th Cir. 2015), *vacated sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016). In *Cole*, the Fifth Circuit recognized deliberate fabrication of evidence by police may create a Fourteenth Amendment claim if such a claim may not be pursued under the Fourth Amendment. *Id.* First, Plaintiffs have a Fourth Amendment claim in this case. Second, the Fifth Circuit issued this decision on September 25, 2015, over four months *after* the shootout at Twin Peaks. Again, to overcome a defendant's qualified immunity, a plaintiff must show that the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed*, 923 F.3d at 414. The exception that Plaintiffs seek to

invoke had not yet been recognized in this Circuit at the time their cause of action arose, and as such, any right recognized in *Cole* was not clearly established.

There are two claims against government agents for alleged Fourth Amendment violations in connection with a search or arrest warrant: **(1)** claims under *Malley*, 475 U.S. at 335, for which the agent may be liable if he "fil[es] an application for an arrest warrant without probable cause" and "a reasonable well-trained officer . . . would have known that [the] affidavit failed to establish probable cause," *Michalik v. Hermann*, 422 F.3d 252, 259–60 (5th Cir. 2005) (citations and internal quotation marks omitted); and **(2)** claims under *Franks v. Delaware*, 438 U.S. 154 (1978), for which the agent may be liable if he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth that results in a warrant being issued

### C.  Independent Intermediary Doctrine

The City and County Defendants argue Plaintiffs' Fourth Amendment claims should be dismissed under the independent intermediary doctrine, which insulates from a false arrest claim the initiating party if an intermediary presented with the facts finds that probable cause for the arrest exists.[3] Each plaintiff in these consolidated cases was indicted by a grand jury. Defendants argue, correctly, that those indictments break the chain of causation between the defendants and the alleged constitutional harms unless an exception applies. Plaintiffs contend the exception does apply such that plaintiffs have stated a plausible claim for relief. The Court finds the doctrine applies, but the exception does not.

"It is well settled that if facts supporting an arrest are placed before any independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 456 (5th

---

[3] Defendant Schwartz argues he is entitled to absolute immunity from any claim based upon his purported testimony to the grand jury. ECF No. 13 at 3.

Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003) (en banc). The Fifth Circuit has repeatedly "applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 554 (5th Cir. 2016). Thus, unless an exception to the independent intermediary rule applies, Plaintiffs' grand jury indictments dooms their Fourth Amendment claims.

Under the taint exception to the independent intermediary rule, a plaintiff may plead a plausible false arrest claim despite the findings of an intermediary "if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Curtis v. Sowell*, 761 Fed. App'x 302, 304 (5th Cir. 2019) (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)). Because the intermediary's discussions protect even individuals with malicious intent, a plaintiff must show that the state actor's malicious motive led the actor to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2019). The Fifth Circuit recently held that when analyzing allegations of taint at the motion to dismiss stage, mere allegations of taint "may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Id.* at 690. Thus, to survive Defendants' Motions to Dismiss, Plaintiffs must provide sufficient facts supporting the inference that each Defendant maliciously tainted the grand jury proceedings. *See Shaw v. Villanueva*, 918 F.3d 414, 417 (holding a plaintiff must show that the defendant maliciously withheld relevant information or otherwise misdirected the intermediary). Plaintiffs have failed to do so in this case.

"The Supreme Court is no-nonsense about pleading specificity requirements." *Shaw*, 918 F.3d at 415. Here, Plaintiffs cannot satisfy the requirement in *Iqbal* to plead facts rising above

the speculative level demonstrating how *each* Defendant tainted the grand jury proceedings by either omitting evidence or misleading the jury. *See Iqbal*, 556 U.S. at 679*; Shaw*, 918 F.3d at 415. A majority of Plaintiff's allegations are that a defendant, grouping of defendants, or sometimes simply, "Defendants," knew that [a particular fact] did not [e.g., establish probable cause as to them or support the charge]; or that the defendants knew that the plaintiffs were not involved in gang violence. However, such threadbare allegations are not sufficient to meet the taint exception. *See Glaster v. City of Mansfield*, 2015 WL 8512, *7 (W.D. La. 2015) (plaintiff did not plead involvement of defendant officer in the grand jury proceedings or factually how he tainted the grand jury's deliberations; officer dismissed on qualified immunity grounds).

In *Curtis v. Sowell*, the Fifth Circuit recognized that during the motion to dismiss stage, mere allegations of taint may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference. *See* 761 Fed. App'x at 304–05. However, the Fifth Circuit affirmed the district court's decision to dismiss the plaintiff's complaint because the plaintiff did not adequately allege how the defendants, or anyone else, deceived or withheld material information from the grand jury. *Id.* at 305. The plaintiff's allegation that the district attorney "persuaded the grand jury to indict [the plaintiff] even though the district attorney knew that there was no factual or legal basis for the charge" was insufficient to invoke the exception to the independent intermediary doctrine. *Id.*

Similarly, Plaintiffs argue Defendants knew they were not in a criminal gang and knew that they did not participate in the criminal conduct at the Twin Peaks restaurant. Despite this knowledge, Defendants still pursued an indictment. However, these conclusory allegations, as they were in *Curtis*, are not sufficient to survive a motion to dismiss. Plaintiffs admit that they do not know what testimony was given before the grand jury; they don't know who testified before

the grand jury; and there is no transcript of the grand jury proceedings. In other words, Plaintiffs are simply guessing at what took place before the grand jury and who testified before the grand jury.[4] Such allegations are no more than rank speculation. *See Rothstein v. Carriere* 373 F.3d 275, 284 (2nd Cir. 2004) (holding where a person's alleged grand jury testimony is unknown, an "argument that [defendant] must have testified falsely to the grand jury amounts to rank speculation."). Because Plaintiffs' conclusions and guesses as to who possibly testified before the grand jury, and what their testimony could have possibly been are the type of formulaic, threadbare allegations that are insufficient under the Supreme Court's *Twombly/Iqbal* standard, the Court must dismiss Plaintiffs' complaint.

As previously mentioned, grand jury proceedings are not generally discoverable. *See Shields v. Twiss*, 389 F.3d 142, 147 (5th Cir. 2004) ("[t]he court notes that under both federal and state law, a general rule of secrecy shrouds the proceedings of grand juries."). However, both federal and Texas law permit discovery of grand jury material when the party seeking discovery demonstrates a "particularized need" for the material. *Id.* at 147–48 (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682–83 (1958); *In re Byrd Enters.*, 980 S.W.2d 542, 543 (Tex. App.–Beaumont 1998, no pet.)). "A party claiming a particularized need for grand jury material under Rule 6(e) has the burden of showing "that the material [it] seek[s] is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that [its] request is structured to cover only material so needed." *Id.* at 147. In the present case, Plaintiffs have failed to even mention, let alone attempt to articulate reasons why they might meet the standard for such discovery. Even if Plaintiffs did

---

[4] The Court is not requiring Plaintiffs to prove the impossible—what occurred inside the secret proceedings of a grand jury. *See McLin v. Ard*, F.3d at 690. However, Plaintiffs' allegations amount to no more than "defendants 'knew of' or 'condoned' the alleged violations of the plaintiffs' constitutional rights. Thus, Plaintiffs have failed to plead adequate factual allegations to support the taint exception. *See Shaw*, 918 F.3d at 418 (noting that a plaintiff's allegation that the defendant knew of or condoned some falsity or omission was insufficient to state a claim).

so, the Court believes, under the facts alleged by Plaintiffs, Plaintiffs could not identify a "particularized need" for grand jury material.

Additionally, Plaintiffs have failed to allege that *each* Defendant (or Defendants generally) *maliciously* omitted evidence or mislead the grand jury. *See Hand v. Gary*, 838 F.2d 1420, 1427 (5th Cir. 1988); *see also Scott v. White*, 2018 WL 2014093, *4 (W.D. Tex. 2018). To invoke the exception to the independent intermediary doctrine, it is not enough that the plaintiff plead that misrepresentations were made to the intermediary or that the defendant omitted to provide material information to the intermediary. The plaintiff must also plead that such conduct was done maliciously. *McLin*, 866 F.3d at 689; *Shaw*, 918 F.3d at 417; *Curtis*, 761 Fed. App'x at 304. Moreover, a plaintiff must plead sufficient factual allegations that *each defendant* maliciously withheld or mislead the grand jury. *Id.* In this case, Plaintiff provides no such factual allegations, let alone allegations concerning *each* defendant.[5] *See generally* ECF No. 22 at 21-22.

Because the Court finds the independent intermediary doctrine applies in this case, Plaintiffs' Fourth Amendment claims against the City and County Defendants must fail. Therefore, the Court **GRANTS** the City and County Defendants' motions to dismiss.

### D. Conspiracy

To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act; and (2) an actual constitutional deprivation. *Cinel v. Cannock*, 15 F.3d 1338, 1343 (5th Cir. 1994). A claim of conspiracy is not actionable without an actual violation of § 1983. *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). If each alleged state

---

[5] Moreover, as Defendants correctly point out, grand jury witnesses have absolute immunity from any § 1983 claim based on the witness' testimony, as well as related investigation or preparation for such testimony. *See Rehberg v. Paulk*, 566 U.S. 356, 369–70 (2012). The Supreme Court in *Rehberg* further stated that such testimony before the grand jury cannot be used to support a § 1983 action. *Rehberg*, 566 U.S. at 369. Therefore, Plaintiffs cannot use any Defendants' alleged grand jury testimony to rebut the presumption of probable cause arising from the indictment.

action fails to overcome the qualified immunity protection, the court does not need to reach the issue of conspiracy for those actions. *Id.* at 920–21.

In this case, Plaintiffs allege that Defendants entered into a conspiracy to violate Plaintiffs' Fourth Amendment rights. ECF No. 22 at 27. The claim is dependent upon the existence of that constitutional violation. Thus, the conspiracy claim is inherently contingent upon Plaintiffs' *Franks* and *Malley* claims. Because the Court has already found that the Plaintiffs failed to overcome Defendants' qualified immunity, the conspiracy claim is not actionable.

However, even assuming the *Franks* and *Malley* claims were not dismissed, the Court still finds that Plaintiffs' conspiracy claim fails to meet the pleading requirements of *Twombly* and *Iqbal*. In Plaintiffs' amended complaint, Plaintiffs allege that Defendants "entered into a conspiracy" and "conspired to cause a warrant to be issued." ECF No. 22 at 27. These allegations fail to provide any attributable actions to any particular person and do not establish an agreement between Defendants. Plaintiffs assert conclusory allegations of an agreement between Defendants, and Plaintiffs do not supply facts adequate to show illegality. Therefore, the conspiracy claim fails on independent grounds, and dismissal is appropriate.

### E. Defendants Schwartz and Frost are Entitled to Qualified Immunity from any Claim Based Upon His Purported Testimony to the Grand Jury

Although the DPS Defendants did not address the independent intermediary doctrine directly, the Court finds the doctrine nonetheless applies to bar Plaintiffs' claims against them.[6] First, whatever conduct the DPS Defendants engaged in prior to the grand jury indicting plaintiffs is inconsequential and is simply not relevant in this case. Previously, the Court ruled in several related cases that Plaintiffs' alleged enough to survive a motion to dismiss. However, the

---

[6] The independent intermediary doctrine does not need to be raised as an affirmative defense. *Holcomb v. McCraw*, 262 F.Supp.3d 437, 452 (W.D. Texas June 27, 2017).

present case is markedly different—Plaintiffs in this case were, in fact, indicted by an independent intermediary, a McLennan County grand jury. Thus, regardless of the DPS Defendants' prior conduct leading up to the indictment, even if their conduct was malicious, the independent intermediary destroys any casual connection between the alleged harm and any constitutional violation by Defendants. Accordingly, for the same reasons discussed above, *supra section C,* Plaintiffs fail to overcome Defendants' qualified immunity and dismissal is appropriate. *Buehler*, 824 F.3d at 555 ("[T]he plaintiff must affirmatively show that the defendants tainted the intermediary's decision.")

## IV.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss. Accordingly, Defendants Frost and Schwartz's Motions to Dismiss (ECF Nos. 25, 37, 41); the City Defendants' Joint Motions to Dismiss (ECF Nos. 26, 36, 38, 40, 43); and Defendants Reyna's Motions to Dismiss (35, 39, 42) are **GRANTED**.

**SIGNED** this 7th day of August, 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE