IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WILLIAM REDDING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| PATRICK SWANTON, et al, | § | CASE NO. 1:17-CV-470-ADA-JCM |
| | § | |
| Defendants. | § | |

### REPORT AND RECOMMENDATION OF
### THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ALAN D ALBRIGHT,
      UNITED STATES DISTRICT COURT JUDGE

This Report and Recommendation is submitted to the Court pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and Rules 1(f) and 4(b) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court are Defendants Frost and Schwartz's Motions to Dismiss (ECF Nos. 13, 25, 37, 41); Defendants Chavez, Rogers, Stroman, and Swanton's Motions to Dismiss (ECF Nos. 9, 26, 36, 38, 40, 43); Defendant Reyna's Motions to Dismiss (ECF Nos. 35, 39, 42); and Chavez, Rogers, Stroman, and Swanton's Motion to Supplement their Motions to Dismiss (ECF No. 50). For the following reasons, the undersigned **RECOMMENDS** Defendants' Motions be **GRANTED**.

### I.   BACKGROUND

This case stems from the Twin Peaks restaurant incident on May 17, 2015. Members of the Bandidos and Cossacks Motorcycle Clubs, along with hundreds of other motorcycling enthusiasts, converged on the restaurant. Tensions between the Bandidos and Cossacks erupted

1

in a shootout that left nine dead and many injured. In the aftermath of the incident, police arrested 177 individuals on charges of Engaging in Organized Criminal Activity. The probable cause affidavit in support of the arrest warrants was the same for each of the 177 arrestees, and a justice of the peace set bond for each of the arrestees at one million dollars. Only one of the criminal cases ever went to trial (the defendant in that case is not a party to the instant action), and those proceedings ended in a mistrial. The state eventually dropped all remaining charges against the arrestees. The Plaintiffs in this case were arrested pursuant to the same probable cause affidavit as the other arrestees. Significantly, Plaintiffs were also indicted. The indictments against Plaintiffs were later dismissed.

Plaintiffs brings this case pursuant to 42 U.S.C. § 1983. They allege that the defendants violated their Fourth Amendment rights by obtaining arrest warrants based on a fill-in-the-name affidavit that lacked probable cause. Plaintiffs also allege that the defendants violated their First Amendment right to associate and free expression by arresting them. Finally, Plaintiffs assert that the defendants conspired to commit these violations.

There are three categories of defendants in this case. The first category consists of: Brent Stroman, Chief of Police; detective Jeffrey Rogers; and police officers Manual Chavez, and Patrick Swanton. The second category is former McLennan County District Attorney Abelino Reyna. The third category is Steven Schwartz and Christopher Frost, both of whom are special agents of the Texas Department of Public Safety. The defendants all assert qualified immunity.

## II.  LEGAL STANDARDS

Title 42 U.S.C. § 1983 creates a cause of action against any person who, under color of law, causes another to be deprived of a federally protected constitutional right. Two allegations are required to state a cause of action under 42 U.S.C. § 1983. "First, the plaintiff must allege

that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988).

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6); *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). To survive Rule 8, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court begins by identifying which allegations are well-pleaded facts and which are legal conclusions or elemental recitations, accepting as true the former and rejecting the latter. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court need not blindly accept every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions "masquerading as factual conclusions." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002). The court then determines whether the accepted allegations state a plausible claim to relief. *Id.* at 379.

"Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks omitted). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. "The plausibility

standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* For purposes of Rule 12(b)(6), "pleadings" include the complaint, its attachments, and documents referred to in the complaint and central to a plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–499 (5th Cir. 2000).

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action barred by qualified immunity. *See Bustillos v. El Paso Cnty. Hosp. Dist.*, 226 F. Supp. 3d 778, 793 (W.D. Tex. 2016) (Martinez, J.) (dismissing a plaintiff's claim based on qualified immunity). Qualified immunity shields government officials from civil liability for claims under federal law unless their conduct "violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law," the Fifth Circuit considers qualified immunity the norm and admonishes courts to deny a defendant immunity only in rare circumstances. *Romero v. City of Grapevine*, 888 F.3d 170, 176 (5th Cir. 2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted).

Courts use a two-prong analysis to determine whether an officer is entitled to qualified immunity. *Cole v. Carson*, No. 14-10228, 2019 WL 3928715, at *5 (5th Cir. Aug. 20, 2019), *as revised* (Aug. 21, 2019). A plaintiff must show (1) the official violated a constitutional right; and (2) the constitutional right was "clearly established" at the time of the defendant's alleged misconduct. *Reed v. Taylor*, 923 F.3d 411, 414 (5th Cir. 2019). The Supreme Court held in *Pearson* that "the judges of the district courts . . . should be permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." 555 U.S. at 236. Although qualified immunity is an affirmative defense, the plaintiff bears the burden to rebut the defense and assert facts to satisfy both prongs of the analysis. *Brumfield*, 551 F.3d at 326. If a plaintiff fails to establish either prong, the public official is immune from suit. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007).

## III.   ANALYSIS

### A. Fourth Amendment

Plaintiffs sue Defendants for violating their Fourth Amendment rights by causing them "to be arrested by knowingly and intentionally, or with reckless disregard for the truth, creating a facially deficient affidavit in support of the arrest warrant, that utterly lacks facts that would support probable cause to arrest" Plaintiffs. Pl.'s 1st Am. Compl. at ¶ 74 (ECF No. 22). They also sue Defendants for "intentionally and knowingly, or with reckless disregard for the truth causing the affidavit in support of the arrest warrant to include materially false and misleading statements, without which there was no probable cause for Plaintiff's arrest." *Id.* at ¶ 76.

There are two claims against government agents for alleged Fourth Amendment violations in connection with an arrest warrant: (1) claims under *Malley*, 475 U.S. at 335, for which the agent may be liable if he "fil[es] an application for an arrest warrant without probable cause" and "a reasonable well-trained officer . . . would have known that [the] affidavit failed to establish probable cause," *Michalik v. Hermann*, 422 F.3d 252, 259–60 (5th Cir. 2005) (citations and internal quotation marks omitted); and (2) claims under *Franks v. Delaware*, 438 U.S. 154 (1978), for which the agent may be liable if he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth that results in a warrant being issued

5

without probable cause," *Michalik*, 422 F.3d at 258 n.5. In the instant case, Plaintiffs bring claims under both theories.

1. *Malley* **violation**

Plaintiffs allege that Defendants violated their Fourth Amendment rights by presenting a facially deficient warrant affidavit. Pls.' 1st Am. Compl. at ¶¶ 64. Plaintiffs argue that the warrant is a general warrant, devoid of any particularized facts related to any of the plaintiffs. *Id.* at ¶ 55. This Court has already addressed these same allegations by other Twin Peaks plaintiffs.

In comparing the identical arrest warrant against *Malley* case law, the Court found that the affidavit was a significant improvement upon the classic bare bones affidavit. *Weaver v. Stroman*, No. 1:16-CV-1195-ADA-JCM, 2019 WL 4738914, at *4 (W.D. Tex. Sept. 27, 2019), *rev'd on other grounds*, 4 F.4th 270 (5th Cir. 2021). The Court specifically found that the "affidavit, prepared in the context of a melee involving multiple shootings and 177 arrests, clearly identifies the subject, the offense, the parties involved, the time and circumstances under which they met, what they wore, identifying characteristics, and the weapons they used." *Id.* Based on that finding, the Court dismissed those plaintiffs' *Malley* claims. Moreover, the Fifth Circuit held that "standing alone, as the district court held, the warrant affidavit sufficiently alleged probable cause to arrest those to whom its facts applied." *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021). Consistent with this Court's prior opinion and the Fifth Circuit affirmation that the warrant affidavit is not facially deficient, the undersigned **RECOMMENDS** that Plaintiffs' *Malley* claims be **DISMISSED.**

2. *Franks* violation

Plaintiffs also allege that the Defendants violated their Fourth Amendment rights by deliberately or recklessly providing false, material information for use in an affidavit in support of an arrest warrant. *Franks*, 438 U.S. at 171.

> The *Franks* case arose in the context of a search warrant, but its rationale extends to arrest warrants. *See Melton v. Phillips*, 875 F.3d 256, 262 (5th Cir. 2017) (en banc). Liability under *Franks* can arise from either material misstatements or material omissions in warrant affidavits. *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005); *United States v. Martin*, 615 F.2d 318, 328 (5th Cir. 1980) (citing cases). Functionally, the holding of *Franks* is an exception to the independent intermediary doctrine, which provides that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (citation and internal quotation marks omitted). But "the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Id.* To determine taint, the essential inquiry is whether "there remains sufficient content in the warrant affidavit to support a finding of probable cause" *after* the "material that is the subject of the alleged falsity or reckless disregard is set to one side." *Franks*, 438 U.S. at 171–72, 98 S. Ct. at 2684.

*Terwilliger*, 4 F.4th at 281–82.

This Court previously dismissed all claims against all of the defendants based on the independent intermediary rule. Order (ECF No. 44). The Court reasoned that the grand jury indictments broke the chain of causation because Plaintiffs did not "plead facts rising above the speculative level demonstrating how *each* Defendant tainted the grand jury proceedings by either omitting evidence or misleading the jury." *Id.* at 10–11. The Fifth Circuit reversed, clarifying the law surrounding the independent intermediary rule.

Generally, if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest. *Wilson*, 33 F.4th 202, 208 (5th Cir. 2020) (citations omitted). This is true even if the

independent intermediary's action occurred after the arrest or if the arrestee was never convicted of a crime. *Id.* But the intermediary must actually be independent. *Id.* Thus, defendants can be liable for false arrest if the plaintiff shows that the deliberations were tainted by the defendant's actions. *Id. Franks* is an exception to the intermediary rule. *Id.* For plaintiffs that plead an officer obtained an arrest from a magistrate in violation of *Franks*, nothing more is required to show that the independent intermediary doctrine does not apply to the intermediary's decision. *Id.* That "does not necessarily prevent a *second* intermediary's decision—such as a grand jury's indictment—from triggering the independent intermediary doctrine to ultimately insulate the officer from liability." *Id.* In a *Franks* case where a second intermediary is involved, the plaintiff need only show that the second intermediary's deliberations were tainted such that it did not have all the facts before it necessary to render an independent determination of probable cause. *Id.* at 210. But "there is no requirement to show that each and every defendant . . . tainted the secret grand jury deliberations." *Id.* at 209. The Court further clarified that Plaintiff "must adequately plead (and ultimately prove) that each defendant falls within the scope of liability for the *Franks* violation allegedly committed in securing the arrest warrant from the magistrate." *Id.* (citations omitted).

    The Fifth Circuit reversed and remanded to this Court to determine whether Plaintiff has adequately pleaded a *Franks* violation with respect to the defendants in this case. The Court will, therefore, first determine whether Plaintiff has adequately pleaded a *Franks* violation against each defendant.

    In *Terwilliger*, the plaintiffs denied affiliation with the Bandidos or Cossacks or any criminal street gang. *Terwilliger*, 4 F.4th at 282. They also alleged that their attire and behavior before and during the incident was lawful. *Id.* The *Terwilliger* plaintiffs further alleged "that the

Defendants deliberately excluded relevant information that would have weighed against individualized probable cause, such as video evidence, witness interviews, and membership in motorcycle clubs known to be independent and not affiliated with the Bandidos or Cossacks." *Id.* at 283.

Based on these allegations, and assuming that they were true, the Fifth Circuit held that Chavez and Reyna were within the compass of potential *Franks* liability. *Id.* at 283–84. Chavez was within the scope because he signed the warrant affidavit and swore to the validity of the facts contained therein. *Id.* at 283. Reyna was within the scope because the plaintiffs alleged that "Reyna was provided with evidence both from the scene and interviews of attendees," but directed that "'all bikers wearing colors' should be arrested." *Id.* at 284.

Interestingly, none of the Plaintiffs denies being associated with the Cossacks or the Bandidos. Nor do they deny that their clothing indicated a membership with the Cossacks or the Bandidos. Nonetheless, Plaintiffs allege that their actions during the shootout were lawful. *Id.* at ¶ 27. Plaintiffs also allege that the affidavit "omitted all of the exculpatory facts affirmatively known by Reyna and the other defendants." *Id.* at ¶ 60.

The *Terwilliger* case lays out the blueprint for what Twin Peaks plaintiffs must allege to survive a motion to dismiss. The *Terwilliger* plaintiffs denied affiliation with the Cossacks and Bandidos. *Terwilliger*, 4 F.4th at 282. Plaintiff does not deny affiliation with either group. The *Terwilliger* plaintiffs claimed that their vests were entirely lawful. Plaintiffs also assert that their vests were lawful. The *Terwilliger* plaintiffs alleged that the defendants "deliberately excluded relevant information that would have weighed against individualized probable cause, such as video evidence, witness interviews, and membership in motorcycle clubs known to be independent and not affiliated with the Bandidos or Cossacks." *Terwilliger*, 4 F.4th at 283.

9

Plaintiff alleges that Defendants excluded relevant information such as video evidence showing that Plaintiffs were not involved in the violence. Pl.'s 1st Am. Compl. at ¶ 46.

Plaintiffs' denials that they were associated with a gang are inadequate to survive. In *Wilson*, the Fifth Circuit noted that the *Terwilliger* plaintiffs successfully pleaded a *Franks* claim because they plausibly alleged that "they were not associated with the Bandidos or Cossacks." *Wilson*, 33 F.4th at 207. The court expanded on that noting that "notably absent from many of the plaintiffs' complaints are any specific statements denying affiliation with the Bandidos or Cossacks or denying that they were wearing the 'signs and symbols' of either group." *Id.* at 213, n.8. Moreover, the court held that merely denying membership in a criminal street gang is a legal conclusion, not a fact, and that "many members of the Bandidos or Cossacks would also deny being members of a criminal street gang." *Id.* Denying membership and association with the Bandidos and Cossacks is, therefore, required for a Twin Peaks plaintiff to state a *Franks* claim. These Plaintiffs have failed to allege that and instead generally allege that they are not associated with any criminal street gang. For these reasons, Plaintiffs' *Franks* claim against Defendants should be **DISMISSED.**

### B. First and Fifth Amendment Violations

Defendants argue that Plaintiffs' First Amendment and Fifth Amendment are simply repackaged claims that Plaintiffs were arrested without probable cause. In Plaintiffs' brief statement of their First and Fifth Amendment claims, Plaintiffs assert that Defendants caused them to be arrested "solely for exercising [their] Constitutional [sic] right of association," "solely for being present," and for being a member of a club Defendants did not approve of. *Id.* at ¶¶ 71, 72. These conclusory allegations are insufficient to state a claim for First Amendment violations. Moreover, Defendants are correct that Plaintiffs are merely recasting their unlawful arrest claim

under the Fourth Amendment with their First and Fifth Amendment claims. Since the Court should dismiss Plaintiffs' Fourth Amendment unlawful arrest claims, Plaintiffs' First and Fifth Amendment claims also cannot survive.

### C. Conspiracy

Plaintiffs also sue Defendants for conspiracy. They allege that the Defendants "entered into a conspiracy to deprive" Plaintiffs of their constitutional rights and "acted in concert either to orchestrate or to carry out the illegal seizure and cause the illegal arrest and incarceration" of Plaintiffs. *Id.* at ¶ 79. These allegations are functionally identical to those made in *Terwilliger* which the Fifth Circuit found to be deficient. Plaintiffs' conspiracy claims should be **DISMISSED.**

## IV.   CONCLUSION

For the reasons outlined above, the undersigned **RECOMMENDS** that Defendants Frost and Schwartz's Motions to Dismiss (ECF Nos. 13, 25, 37, 41); Defendants Chavez, Rogers, Stroman, and Swanton's Motions to Dismiss (ECF Nos. 9, 26, 36, 38, 40, 43); Defendant Reyna's Motions to Dismiss (ECF Nos. 35, 39, 42); and Chavez, Rogers, Stroman, and Swanton's Motion to Supplement their Motions to Dismiss (ECF No. 50) be **GRANTED** and that Plaintiff's lawsuit be **DISMISSED.**

## V.   OBJECTIONS

The parties may wish to file objections to this Report and Recommendation. Parties filing objections must specifically identify those findings or recommendations to which they object. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc). Except upon grounds of plain error, failing to object shall further bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas*, 474 U.S. at 150–53; *Douglass*, 79 F.3d at 1415.

**SIGNED this 8th day of August 2024.**

_____
**JEFFREY C. MANSKE
UNITED STATES MAGISTRATE JUDGE**